IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GREG BAILEY,                                    )
                                                )
 Plaintiff,                                )
                                                )
v.                                              )  CASE NO. 3:22-cv-59-RAH
                                                )     [WO]
KNOLOGY OF THE VALLEY, INC.,                    )
                                                )
 Defendant.                                )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Greg Bailey spent more than two decades working as a system technician for Defendant Knology of the Valley d/b/a Wow! Internet, Cable, and Phone (Knology) and its predecessor companies, with a focus on copper wiring used for telephone lines.  According to Knology, it made a business decision to terminate all employees holding Bailey's position because of COVID-19 and the move away from copper-wired telephone lines.  Given that all of the employees who held this position were over the age of 60 years, Bailey concluded that age discrimination played a role in his and the other employees' terminations, and therefore he filed suit under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (ADEA), and the Alabama Age Discrimination in Employment Act, ALA. CODE § 25-1-20 *et seq.* (AADEA).  Knology now moves for summary judgment.  (Doc.

22.)  After considering the arguments and evidentiary submissions of the parties, the Court concludes that Knology's summary judgment motion is due to be granted.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over Bailey's federal claim under 28 U.S.C. § 1331 and supplemental jurisdiction over Bailey's state law claim under 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to [its] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The legal elements of a claim determine which facts are material and which are not material.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A fact is not material if a dispute over that fact would not affect the outcome of the case under the governing law.  *Id.*

A court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the evidence in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242–43 (11th Cir.

2001).  The nonmovant must produce sufficient evidence to enable a jury to rule in his favor; a mere scintilla of evidence in support of a position is insufficient.  *Id.* at 1243.

## IV.  BACKGROUND

The facts, stated in the light most favorable to Bailey, the nonmovant, are as follows:

Bailey, who was 62 years old at the time of his termination, formerly worked as one of two System Technicians–ILEC for Knology in Valley, Alabama.  (Doc. 22-2 at 4, 9–10, 12.)  As a System Technician–ILEC, Bailey worked exclusively as a splicer repairman, focusing primarily on copper wire parts for Knology's telephone service and direct subscriber line (DSL).  (Doc. 22-2 at 11–12, 16, 20.)  He also performed some work splicing fiber lines, but this was minimal.  (*Id.*)

In late 2020, Bailey was told that his position would be eliminated due to the COVID-19 pandemic and budget cuts, as the company was eliminating maintenance technician jobs on the telephone side of the company.  (*Id.* at 14.)  Including Bailey, four system technicians, all of whom were over 60 years of age, lost their jobs.  (Doc. 22-2 at 14, 17; Doc. 22-5 at 5; Doc. 22-6 at 6.)  According to Nathan Szubert, VP of System Maintenance and Plant Ops, who was charged with determining which positions to cut from the company, he sought to eliminate positions that focused on "single skill sets" and to incorporate those skill sets into other positions to improve

3

efficiencies within the company.  (Doc. 22-3 at 6.)  As such, the duties of the telephone copper wire technician position (System Technician–ILEC) were folded into the broader System Technician position, which required a different and broader skill set.  (Doc. 22-4 at 6–7; Doc. 22-5 at 16, 24.)  But it was not only the System Technician–ILECs who were subject to the cuts, as two System Technicians were also terminated.  (Doc. 22-6 at 6.)

Bailey's last day at Knology was January 22, 2021.  (Doc. 22-2 at 4.)  But Bailey was not let go without options.  He was informed that he could apply for one of the two soon-to-be-open System Technician positions, but that he could not internally transfer into the position.  (*Id.* at 25; Doc. 22-5 at 13.)  Bailey decided not to apply because he would have been paid about half of what he earned in his previous position.  (Doc. 22-2 at 25–27.)

Kevin Sims, Bailey's supervisor, testified that Bailey did not have any of the other skill sets required for the System Technician position, but that Knology did offer Bailey the opportunity to cross-train if he applied for the System Technician position.  (Doc. 22-4 at 6–7.)  Bailey disputes that he was offered the chance to cross-train on other technician responsibilities.  (Doc. 22-2 at 33; *see also* Doc. 24-5 at 1 ("I would have cross trained on the other technician responsibilities had my employer allowed.").)  Bailey also testified that he would have trained for a new skill set to avoid being laid off.  (Doc. 22-2 at 26.)

The two System Technician positions that subsumed Bailey's former job responsibilities were posted within three weeks of Bailey's departure. (Doc. 24-2; Doc. 24-3; Doc. 24-4.) Bailey did not apply for either position. The two individuals ultimately hired into those positions were significantly younger than Bailey and came into the position with no experience splicing copper. (Doc. 22-4 at 9–10.)

## V.  DISCUSSION

The ADEA and AADEA prohibit employers from discriminating against employees who are 40 years or older because of their age. 29 U.S.C. § 623(a)(1); ALA. CODE § 25-1-21 to -22. The plaintiff can survive a summary judgment motion by producing either direct or circumstantial evidence of intentional age discrimination. *See Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010). Where, as here, an ADEA or AADEA claim is based on circumstantial evidence, courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) (applying the *McDonnell Douglas* burden-shifting framework to an ADEA claim); *Robinson v. Ala. Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007) (explaining that Alabama courts apply the *McDonnell Douglas* burden-shifting framework when analyzing AADEA claims). But even if a plaintiff's ADEA claim cannot survive under the *McDonnell Douglas* framework, a plaintiff's claim can still survive summary judgment if he can present a

"convincing mosaic" of circumstantial evidence that would permit a jury finding of intentional discrimination.  *Sims*, 704 F.3d at 1333 (quoting *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).

Knology claims entitlement to summary judgment when Bailey's claims are put to test under both the *McDonnell Douglas* framework and the convincing mosaic analysis.

### A. *McDonnell Douglas* Framework

When raising a claim of age discrimination under the *McDonnell Douglas* framework based on a reduction-in-force or the entire elimination of a position, a plaintiff must first establish a *prima facie* case by showing:

> (1) that he was in a protected age group and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching that decision.

*Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir. 1998) (footnote omitted).[1]  If a plaintiff meets that *prima facie* burden, the employer then has the

---

[1] Rather than relying upon the test outlined in *Williams*, the parties argue whether Bailey can establish a *prima facie* case as articulated for traditional ADEA claims.  *See Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002) (articulating the *prima facie* case for a traditional ADEA claim).  Since this case involves a reduction-in-force or the elimination of the position (depending on one's reading of the facts), the Court will cite the more appropriate standard here for purposes of outlining the necessary legal rule statements.  *But cf. Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (noting that while a related test for establishing a *prima facie* case of age discrimination when challenging a reduction-in-force, like other variations, "is not 'the alpha and omega of possible tests in the age discrimination context,' it does establish the proposition that the

burden of production to articulate some "legitimate nondiscriminatory reason" for its conduct. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993). Once the employer offers a justification, the plaintiff must show that the employer's proffered reason for its actions is pretextual and that the employer did in fact intend to discriminate. *Sims*, 704 F.3d at 1333.

The Court will assume, without deciding, that Bailey can meet his *prima facie* case and analyze the issue of whether Knology has offered a legitimate, nondiscriminatory reason for Bailey's termination and whether Bailey has sufficiently shown that Knology's asserted reason is pretextual.

Knology argues that Bailey's position was eliminated because economic cuts were needed in light of the COVID-19 pandemic and because there was a reduced need to dedicate technicians solely to servicing copper wiring due to changes in network technology. Knology's burden for establishing a legitimate nondiscriminatory reason for the challenged action is "exceedingly light." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994) (quoting *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)). Downsizing for

---

plaintiff's burden is to introduce evidence that supports a reasonable inference of intentional age discrimination" (citation omitted)); *Sims*, 704 F.3d at 1333 ("Although . . . our holding today reaffirm[s] the use of the *McDonnell Douglas* framework in ADEA cases, this framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case," as "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." (citation omitted)). As noted below, this issue is not dispositive, as the Court assumes without deciding that Bailey established a *prima facie* case of age discrimination.

economic purposes is a plainly legitimate rationale for terminating an employee.  *See Sims*, 704 F.3d at 1334 (concluding that budget constraints are a legitimate nondiscriminatory reason for the elimination of two positions, and thus the termination of a plaintiff).  Accordingly, Knology's economic- and technological-efficiency rationales for the elimination of the System Technician–ILEC position are sufficient to meet the "exceedingly light" burden Knology carries at this stage.  *See Turnes*, 36 F.3d at 1061.

Bailey may show pretext by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Knology's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted).  Bailey cannot "simply quarrel[] with the wisdom of [Knology's] reason" but "must meet that reason head on and rebut it."  *Chapman v. AI Trans.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).  In other words, summary judgment is appropriate if Bailey fails to "set[] forth specific facts showing" a genuine issue exists as to whether Knology's articulated reason is pretextual.  *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987).

Bailey does not directly address Knology's asserted rationale for the termination—budget constraints—something he must do at this stage.  *See id.*  For example, he does not argue or produce evidence that economic cuts were not needed

or that there was no reduced need for copper wiring technicians.  Instead, his core argument as to pretext is that the older employees were not offered the opportunity to cross-train like the younger employees, suggesting that consolidating copper wire splicing duties into the System Technician position was a means of targeting the older employees based on age.  However, Bailey does not provide sufficient evidence that would permit a reasonable inference of age discrimination.  For example, Bailey does not sufficiently address the evidence that System Technicians were already required to have a broader skill set than what Bailey held, or that it made business sense from an efficiency standpoint to simply require those employees who faced a shallower learning curve to pick up one more skill set rather than requiring those with one or two skill sets to learn a host of new ones.[2]  Bailey also does not argue that he would have been denied the opportunity to engage in the necessary training had he applied for and been awarded a System Technician position.  While perhaps requiring certain technicians to reapply for positions within the company was not the fairest decision, it is not for the Court to second-guess

---

[2] Bailey also asserts as evidence of pretext that Szubert, who made the decision to eliminate the System Technician–ILEC position, labeled copper-related work as "esoteric."  (*See* Doc. 22-3 at 5, 7.)  In that same portion of Szubert's deposition, though, he notes that, accordingly, "the training usually falls within the team itself."  (*Id.* at 5.)  Just because a job responsibility is more difficult to learn than others does not mean that its consolidation with other job responsibilities lacks business sense, especially when the skill can nevertheless be taught.

routine business judgments that alone do not evidence discriminatory motives.  *See Combs*, 106 F.3d at 1543.

Bailey has not met his burden to show that the asserted rationale for his termination was a pretext for age discrimination.  Accordingly, his ADEA and AADEA claims cannot proceed when evaluated under the *McDonnell Douglas* framework.

### B. Convincing Mosaic

Bailey also argues that his ADEA claim survives when analyzed under the convincing mosaic framework.[3]  A convincing mosaic may be shown with "evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (alteration in original) (citation omitted).

Bailey first asserts that Knology's decision to target technicians who specialize in copper evidences an intent to discriminate against older employees. But this neutral reason does not indicate age discrimination, especially since the

---

[3] The parties do not argue that the convincing mosaic analysis may be applied to the AADEA claim, nor is the Court able to independently find authority suggesting that Alabama courts have applied the convincing mosaic analysis to AADEA claims.  Thus, the Court will construe the parties' arguments as to the convincing mosaic theory as addressing Bailey's ADEA claim only. Nevertheless, even if the Court analyzed Bailey's AADEA claim under the convincing mosaic framework, it would fail for the same reasons Bailey's ADEA claim fails.

parties all acknowledge the technological shift away from copper wire toward fiber optic. And more importantly, Bailey does not address the fact that he was not only offered the opportunity to apply for the System Technician position but was encouraged to do so, yet he elected not to apply for compensation-related reasons. Bailey's assertion that his underlying work in copper was never eliminated, and instead the work was transferred to younger workers, is also unavailing, as it does not sufficiently rebut Knology's stated reason of absorbing the copper wire technician duties into the broader System Technician positions.[4] Bailey has not presented a convincing mosaic that his termination was based on age. Nor do any of the facts or argument made by Bailey rise to the level of conduct where the Eleventh Circuit has allowed discrimination claims to proceed under the convincing mosaic analysis. *See, e.g.*, *Jenkins v. Nell*, 26 F.4th 1243, 1250–51 (11th Cir. 2022) (holding that a terminated white crane operator created a triable issue of fact as to his convincing mosaic theory when he provided evidence of black crane operators receiving more favorable treatment than white crane operators, shifting reasons for the plaintiff's termination by the defendant, and racially charged comments made by

---

[4] To the extent Bailey argues that the change in job positions was merely a formality and not backed by substance, this assertion is undermined by the evidence, even when considered in the light most favorable to Bailey. The job postings referenced in Bailey's evidentiary submission show a vast expansion of responsibilities as compared to those of the System Technicians–ILEC, Knology officials testified that the role required knowledge of several skill sets, and Bailey himself acknowledged that transitioning to the role would require expanding his skills. None of this evidence suggests a discriminatory motive in combining job responsibilities, especially given Knology's unrebutted assertions that the rationale is economic in nature.

the decision-maker defendant); *Lewis*, 934 F.3d at 1185–89 (finding that a black female police officer allegedly terminated for medical reasons established a triable issue of fact under a convincing mosaic theory by providing evidence of several arbitrary personnel decisions, pretext regarding the reason for her termination, and more favorable treatment for her physically limited white male colleagues).

In sum, Bailey has failed to produce evidence sufficient to permit a reasonable inference of intentional age discrimination.  Consequently, Knology's summary judgment motion is due to be granted.

## VI.  CONCLUSION

Based on the foregoing, it is ORDERED that the Defendant's Motion for Summary Judgment (Doc. 22) is GRANTED.

A separate Final Judgment will follow.

DONE, on this the 5th day of May, 2023.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE